# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| James C. Young and Tahnee R. Young, ) | |
| ) | |
| Plaintiffs, ) | Case No. 3:23-cv-119 |
| ) | |
| vs. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Midland Mortgage, ) | |
| ) | |
| Defendant. ) | |

James C. Young and Tahnee R. Young (Youngs), proceeding pro se, allege Midland Mortgage (Midland) violated federal and state law regarding mortgage servicing. The Youngs moved for summary judgment based on the allegation that Midland did not properly respond to their multiple letters requesting various documents and affidavits. (Doc. 20). Midland opposes the Youngs' motion for summary judgment and moves for summary judgment in its favor. (Doc. 24).

## Summary of Recommendation

This court has thoroughly reviewed the parties' briefs and evidence submitted in support of and in opposition to the motions. In their summary judgment motion, the Youngs allege Midland failed to "completely answer and provide affidavits to their qualified written requests." (Doc. 20). This court recommends the Youngs' motion, (Doc. 20), be denied based on lack of any genuine issue of material fact.

In Midland's motion, it requests summary judgment based on the Youngs' failure to show any genuine issue of material fact on any of their claims. This court recommends Midland's motion for summary judgment, (Doc. 24), be granted.

**Factual Background**

On April 20, 2016, The Mortgage Company, Inc., extended a loan to the Youngs in the amount of $275,793.00. (Doc. 1-1; Doc. 5). In August of 2022, Midland acquired and began to service the loan. (Doc. 24-6). Midland, a division of Midfirst Bank, is an Oklahoma financial institution engaged in the business of originating and servicing residential mortgage loans. (Doc. 1-1; Doc. 5; Doc. 23). Soon after the loan acquisition, disputes arose about the assignment of the loan to Midland and alleged private mortgage insurance (PMI) payments. The Youngs stopped making payments and sued Midland for damages and to stop its debt collection efforts. (See Doc. 38, p.2).

On January 4, 2023, the Youngs sent a letter captioned "Conditional Acceptance of Debt upon Proof of Claim." (Doc. 20-2). That letter requested Midland provide various documents: "proof of claim for any debt I am liable for, evidenced by a sworn affidavit," "certified copy of [Midland's] balance sheet and (Federal Reserve form) FR2046," "the IRS form 1099OID relating to this loan transaction," "the 424 B-5 prospectus (security filing), RC-S and RC-B call schedules, and FAS 125, 133, 140, 5, and 95 forms and any other GAAP forms regarding alleged 'loan,'" "the cancelled check (bill of exchange) . . . showing asset transfer into the account that funded the alleged 'loan,'" "an affidavit from the party having firsthand knowledge that lawful money was advanced on [the Youngs'] behalf . . . [and] swearing that [Midland] would suffer a loss if [the Youngs] did not repay," "the opportunity to witness the original wet-ink 'security instrument' (Deed of Trust) and 'promissory note' . . . [and a] copy of the loan application," "proof [Midland] had the lawful authority to operate under, to loan anything other than gold or silver gold coin and create a debt obligation by the alleged

2

'borrower,'" and "proof of compliance with the truth in lending laws of the United States Code . . . and the Fair Debt Collection Act ." Id.

On January 16, 2023, the Youngs sent a letter captioned "Homeowners Protection Act Violations." (Doc. 20-4). That letter requested "proof of claim for any debt I am liable for, evidenced by a sworn affidavit," "a certified copy of the evaluation made in the consideration of the purchase or the servicing of the above mentioned mortgage loan," and "proof of compliance with the truth in lending laws and the laws of the Federal Homeowners Protection Act of 1998 of the United States Code." Id.

On February 6, 2023, Midland responded to the Youngs. (Doc. 24-7). Midland stated since it was not a party to the loan origination, it would not be responding to any loan origination related claims. Id. Midland also stated, "This response does not include confidential, proprietary, or privileged information, information that does not directly relate to the mortgage loan or requests that are overbroad or unduly burdensome." Id. With the February 6 response, Midland included copies of the loan documents and the Youngs' history of recent payments to Midland. Id.

On February 22, 2023, the Youngs sent a letter captioned "Notice of Fault and Opportunity to Cure Dishonor." (Doc. 20-6). That letter stated Midland had defaulted on proving any claim of a debt owed by the Youngs to Midland. Id.

On February 27, 2023, the Youngs sent another letter captioned "Homeowners Protection Act Violations." (Doc. 20-8). That letter requested cancelation of mortgage insurance and damages: "provide $2,000.00 (as outlined in 12 USC 4907(a)(2)(A) of the HomeOwner's Protection Act, *which allows damages of $1,000.00 PER occurrence*" and "[p]rovide $1,000 (as outlined in 15 USC 813(a)(2)(A) of the Fair Debt Collections Practices Act which *allows damages of $1,000.00 PER occurrence)*." Id.

3

On March 13, 2023, the Youngs sent a letter captioned "Affidavit of: Final Default/& Estoppel/ & Cancellation of: Deed of Trust." (Doc. 20-10). The letter stated "We declare NO rebuttal or controverting of the facts and/or claims was received. . . . We do cancel, rescind, and revoke our signature upon the DOT for fraud and failure to have the required elements of a lawful contract." Id.

On March 31, 2023, Midland acknowledged it had not addressed the Youngs' request to cancel their mortgage insurance payment and apologized for the omission. (Doc. 24-8). Midland explained it was unable to comply with this request because the terms of the mortgage loan agreement state the Youngs' monthly mortgage insurance payment (MIP) is due for the first thirty years of the mortgage term or until the end of the mortgage term and neither of those requirements had been met. Id. Midland informed the Youngs the letter captioned "Affidavit of: Final Default and Estoppel and Cancellation of: Deed of Trust" had no effect on their mortgage obligation. Id. Midland ended the March 31 letter by stating, "In order to fulfill your mortgage obligation, you are required to comply with the terms outlined in your original Security Deed and Note." Id.

**Procedural History**

On April 20, 2023, the Youngs filed a complaint and a motion for default judgment against Midland in state court. Young v. Midland Mortgage, 09-2023-CV-01204, Index #1, 4 (Cass Cnty. April 20, 2023). On May 1, 2023, the state court denied the Youngs' motion for default judgment and later dismissed the case without prejudice upon the Youngs' request. Id. at Index #17, 20.

On June 2, 2023, the Youngs filed another complaint in state court, along with an ex parte motion for an injunction and a motion for default judgment. Young v. Midland

4

Mortgage, 09-2023-CV-01770, Index #19 (Cass Cnty. June 2, 2023). On June 15, 2023, the state court denied the Youngs' motions for an injunction and for default judgment. Id. at Index #16. The state court found the Youngs had not properly served Midland but permitted them thirty days to file proof of valid service to avoid dismissal. Id. The Youngs filed proof of proper service on June 26, 2023. Id. at Index #28.

The Youngs' complaint "seeks relief and redress from Midland Mortgage for their violations of Federal and State law in connection with their wrongful attempt to collect a debt from [the Youngs]; and failure to remove PMI from the monthly payments." (Doc. 20). The complaint alleges claims under the Fair Debt Collections Practices Act (FDCPA), the Truth in Lending Act (TILA), the North Dakota Consumer Fraud and Deceptive Business Act, the Fair Credit Reporting Act (FCRA), and the Homeowners Protection Act (HPA). (Doc. 1-1). On June 28, 2023, Midland filed a notice of removal to this court. (Doc. 1). On July 5, 2023, Midland answered the Youngs' complaint. (Doc. 5).

On August 10, 2023, the court held a scheduling conference, and filed a scheduling order on August 16, 2023. (Doc. 14; Doc. 15). On August 17, 2023, the Youngs filed a motion for default judgment, a motion for summary judgment, and moved for a hearing on both motions. (Doc. 19; Doc. 20; Doc. 21). On August 29, 2023, Midland filed opposition to the Youngs' motions and moved for summary judgment in its favor. (Doc. 24). This court previously recommended denial of the Youngs' motion for default judgment and the motion for a hearing on that motion. (Doc. 40).

**Law and Discussion**

Under Rule 56(a), summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Arena Holdings Charitable, LLC v. Harman Prof'l, Inc., 785 F.3d 292, 293 (8th Cir. 2015) (quoting Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the record as a whole at the time of the motion "could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial" and summary judgment should be granted. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

A party opposing summary judgment "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013) (quoting Wingate v. Gage Cnty. Sch. Dist. No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008)). Rule 56(c)(1)(A) requires "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials" to support factual assertions either for or against a motion for summary judgment. In ruling on a summary judgment motion, a court must view the facts "in the light most favorable to the non-moving party." Id. (quoting Torgerson, 643 F.3d at 1042).

1.  **Youngs' Summary Judgment Motion**

Between January and March 2023, the Youngs sent five letters to Midland requesting various documents and responses. The Youngs allege Midland did not

properly respond to all their requests. They therefore contend Midland has shown no genuine dispute of material fact and they are entitled to summary judgment. Midland argues the Youngs' motion for summary judgment relies solely on Midland's alleged improper responses and does not address any facts related to the complaint or evidence in the record showing no genuine issue of material fact.

To succeed on a summary judgment motion, the moving party must identify evidence in the record showing there is no genuine issue of material fact. With their motion for summary judgment, the Youngs submitted two affidavits. In the affidavits, the Youngs stated they did not receive any "Mortgage Assignment showing transfer of mortgage to [Midland]," they did not receive "ANY Affidavits from [Midland]," and they "do NOT owe [Midland] the '*Alleged Debt*' they claim." The affidavits also stated Midland did not properly answer the Youngs' letters, there were pages missing from the loan application and loan attached to Midland's March 31 response, Midland properly received all three summonses and complaints, and Midland has not properly served any answer regarding those summonses and complaints. (Doc. 20-13; Doc. 20-14).

Although the Youngs submitted affidavits in support of their motion, the affidavits alone do not show there is no genuine issue of material fact as to each of their claims. The Youngs do not identify anything in record to support their claims. Their affidavits and allegations of improper responses to their letters are insufficient to show there is no genuine issue of material fact. The Youngs have not demonstrated they are entitled to summary judgment. This court therefore recommends the Youngs' motion for summary judgment (Doc. 20) be denied.

2.   **Midland's Summary Judgment Motion**

   A.   **Fair Debt Collection Practices Act**

The Youngs' complaint asserts Midland's failure to provide validation of the alleged debt and continued collection activities of the alleged debt constitute violations of the Fair Debt Collections Practices Act (FDCPA).

In its motion, Midland argues it is entitled to summary judgment because it is not a "debt collector" under the FDCPA. Section 1692(a)(6), 15 U.S.C. states

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his [sic] own debts, uses any name other than his [sic] own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include—
>
> . . .
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

(emphasis added). The United States Supreme Court has discussed whether debt purchasers, such as Midland, fall under the FDCPA.

> After all, the Act defines debt collectors to include those who regularly seek to collect debts "owed . . . another." And by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner—not on a debt owner seeking to collect debts for itself. Neither does this language appear to suggest that we should care how a debt owner came to be a debt owner—whether the owner originated the debt or came by it only through a later purchase. All that matters is whether the target of the lawsuit regularly seeks to collect debts for its own account or does so for "another." And given that, it would seem a debt purchaser

8

> . . . may indeed collect debts for its own account without triggering the statutory definition in dispute.

Henson v. Santander Consumer USA, Inc., 582 U.S. 79, 83 (2017).

Midland acquired the loan from The Mortgage Company in August 2022. (Doc. 24-5). Midland owns the loan and is now collecting its own debt from the Youngs. (Doc. 24-6). The Youngs did not provide any evidence showing Midland is a debt collector under the FDCPA. Since the Youngs have not provided supporting evidence regarding that essential element of the FDCPA claim and Midland has shown it is not a debt collector under this statute, there is no genuine issue of material fact as to the Youngs' FDCPA claim. This court therefore recommends Midland's motion for summary judgment be granted in regards to this claim.

**B.    Truth in Lending Act**

The Youngs allege Midland failed to provide accurate and required disclosures in accordance with the Truth in Lending Act (TILA).  The Youngs cite 15 U.S.C. § 1601 broadly, without describing what disclosures Midland allegedly failed to provide. Section 1601 was created to assure creditors meaningfully disclose credit terms so consumers can compare various credit terms and protect themselves from inaccurate and unfair credit practices. 15 U.S.C. § 1601.

The Eighth Circuit has stated a violation of TILA occurs "when credit is extended through the consummation of the transaction between the creditor and its customers without the required disclosures being made." Dryden v. Lou Budke's Arrow Fin. Co., 630 F.2d 641, 646 (8th Cir. 1980).

The Youngs did not provide any evidence showing Midland extended credit to them under the TILA. Midland has shown it was not the original loan provider, acquired

9

the loan from The Mortgage Company in August 2022, and currently services the loan. (Doc. 24-5). Without some evidence showing Midland extended credit, there is no genuine issue of material fact. This court recommends Midland's motion for summary judgment be granted regarding this claim.

    **C.    North Dakota Consumer Fraud and Deceptive Business Practices Act**

The Youngs allege Midland's actions constitute a violation of the North Dakota Consumer Fraud and Deceptive Business Practices Act, which provides,

> The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice. The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice.

N.D. Cent. Code § 51-15-02.

The North Dakota Supreme Court has held section 51-15-02 applies only to the conduct of a person who sells or advertises merchandise, prohibiting deceptive or fraudulent acts regarding the sale of merchandise. <u>Thimjon Farms Partnership v. First Intern. Bank & Trust</u>, 837 N.W.2d 327, 337-8 (N.D. 2023).

The Youngs argue Midland's alleged failure to provide validation of the debt as well as continued collection of the debt violates section 51-15-02, but the Youngs have not provided any evidence to show Midland fraudulently sold or advertised merchandise. Midland has provided evidence showing it acquired the loan from The Mortgage Company, began servicing the loan, and attempted to address the Youngs' issues through

multiple letters. Without some evidence of fraud or deceit, there is no genuine issue of material fact. This court recommends Midland's motion for summary judgment be granted regarding this claim.

### D. Fair Credit Reporting Act

The Youngs' complaint alleges "[s]even (7) Counts for [Midland's] inaccurate reporting of the alleged debt to EACH of the credit reporting agencies for [both of the Youngs], constitutes a violation of the [Fair Credit Reporting Act (FCRA)], 15 U.S.C § 1681 s-2(a)(1)(B)." (Doc. 20).

Section 1681 s-2(a)(1)(B) of FCRA states, "A person shall not furnish information relating to a consumer to any consumer reporting agency if (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate."

The Youngs argue Midland violated the FCRA because Midland continued to report the alleged debt to credit reporting agencies but did not provide validation of the debt. The Youngs did not provide any evidence Midland reported their debt to a credit reporting agency nor any evidence of inaccurate debt reports by Midland. With its motion, Midland provided evidence validating the debt and documentation confirming it is the current loan servicer. Through this evidence, Midland has shown there is no genuine issue of material fact regarding this issue. This court recommends Midland's motion for summary judgment on the FCRA claim be granted.[1]

---

[1] In its motion for summary judgment, Midland contends other subsections of 15 U.S.C § 1681 do not apply, but this court will not address those contentions since the Youngs do not rely on those subsections in their complaint.

### E. Homeowners Protection Act Claim

The Youngs allege Midland's failure to remove insurance payments from their monthly mortgage payment is a violation of the Homeowners Protection Act (HPA). Within their complaint, the Youngs refer to their mortgage insurance as PMI. (Doc. 1-1). Termination of PMI is governed by 12 U.S.C. §4902. The term PMI is defined as "mortgage insurance other than mortgage insurance made available under the National Housing Act, Title 38, or Title V of the Housing Act of 1949." 12 U.S.C§ 4901(13). The Youngs' mortgage insurance is through the Federal Housing Administration (FHA). The FHA is not a private mortgage insurance entity; therefore, the Youngs' insurance is not PMI within § 4902's definition.

According to the document captioned "Important Notice to Homebuyers," which the Youngs signed in March 2016, the type of mortgage insurance that applies to the Youngs is a monthly mortgage insurance premium (MIP).[2] (Doc. 24-4, p. 5). This may be what the Youngs meant when requesting cancelation of insurance in their letters and alleging failure of a cancellation. The HPA applies only to PMI and not to MIP. The "Important Notice to Homebuyers" states,

> In addition to an upfront mortgage insurance premium (UFMIP), you may also be charged a monthly mortgage insurance premium. You will pay the monthly premium for either the first 11 years of the mortgage term, or the end of the mortgage term, whichever occurs first, if your mortgage had an original principal obligation (excluding financed UFMIP) with a loan-to-value (LTV) ratio of less than or equal to 90 percent; or the first 30 years of the mortgage term, or the end of the mortgage term, whichever

---

[2]   The monthly mortgage insurance premium (MIP) is also discussed in the "HUD/VA Addendum to Uniform Residential Loan Application "and the "Informed Consumer Choice Disclosure Notice." The Youngs signed both in 2016. (Doc. 24-4, pp. 2-4, 7).

occurs first, for any mortgage involving an original principal obligation (excluding financed UFMIP) with an LTV greater than 90 percent.

Id.

The Youngs' mortgage involves an LTV ratio of over 90 percent. Id. at 7. Therefore, they are obligated to pay the MIP for the first 30 years of the mortgage term or until the end of the mortgage term, whichever occurs first. Even in viewing the facts in a light most favorable to the Youngs, there is no evidence the Youngs have met either of these requirements for MIP cancelation. Therefore, there is no genuine issue of fact, and this court recommends Midland's motion for summary judgment be granted on this claim.

## Recommendation

Since the Youngs have not shown there is no genuine issue of material fact regarding any of their claims, they have not met the requirements for summary judgment in their favor. This court **RECOMMENDS** the Youngs' motion for summary judgment, (Doc. 20), be denied. Because the parties' briefing adequately presents the issues, the motion for a hearing on the Youngs' motion for summary judgment should also be denied.

Since there is no evidence supporting an essential element of each of the Youngs' claims, Midland has successfully shown there is no genuine issue of material fact regarding the Youngs' claims. This court **RECOMMENDS** Midland's motion for summary judgment be granted on the all the alleged claims.

Dated this 20th day of November, 2023.

*/s/ Alice R. Senechal*
Alice R. Senechal
United States Magistrate Judge

## NOTICE OF RIGHT TO OBJECT[3]

Any objection to this Report and Recommendation must be filed with the Clerk of Court within no later than **December 7, 2023**, in a pleading specifically identifying those portions of the Report and Recommendation to which objection is made and the basis of any objection. Any response to an objection is due by **December 14, 2023**. Failure to object or to comply with this procedure may result in forfeiture of the right to seek review in the Court of Appeals.

---

[3] See Fed. R. Civ. P. 72(b); D.N.D. Civ. L.R. 72.1.